WEBB, Respondent, vs. MASON, Appellant.

*December 13, 1912—January 7, 1913.*

*Vendor and purchaser of land: Agency: Authority to make contract of sale: President acting for bank though signing his own name: Substantial compliance with offer: Conveyance to one having notice of prior sale to another: Specific performance.*

1. The owner of a farm wrote to a bank which held a mortgage thereon: "If you can arrange with . . . any one, and take over the mortgage on the farm, . . . and send me $500 net, I will deed the farm as you desire. . . . I have some other inquiries which I will refer to you." He also wrote to one who had inquired about buying the farm: "The bank . . . holds a mortgage and I have some other collateral there.  I have written them if I can get $500 net cash to me, and clean matters up there, I will deed the farm.  You might call and see them if you so desire." *Held,* that these letters, in connection with other facts and circumstances, showed authority on the part of the bank to make a contract for the sale of the farm on the terms stated.

2. In making a contract for the sale of such land the president of the bank, who was also its manager and principal stockholder and through whom all the business was transacted, is *held* to have acted for the bank, although he signed the contract in the name of the owner by himself, not by the bank, as agent.

3. Although only $300 was paid down by the purchaser on such contract and the other $200 was to be paid at a later date, yet, the bank having offered to send the $200 at any time if required by the vendor, this was a substantial compliance with the vendor's offer to sell for $500 net to him.

4. One who purchases land and receives a conveyance thereof with knowledge of a prior contract for the sale thereof to another, takes the title subject to such contract and may be compelled to convey the land to the purchaser therein.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Reversed.*

This is a controversy between plaintiff and defendant respecting the purchase of a certain tract of land. The defendant was in possession and claimed to have a contract with the owner of the land, through his agent, for the purchase of it, and that the plaintiff, with knowledge of defendant's rights under the contract, purchased it and obtained a deed from the owner. The claim of defendant is that the plaintiff succeeded to defendant's rights in his contract with the owner of the land and that plaintiff should be compelled to specifically perform and deed the land to defendant. Judgment was entered for plaintiff and defendant appealed.

The court found upon sufficient evidence that before the negotiations in question the land was owned by one B. C. Dinsdale; that on October 27, 1911, the defendant was in possession; that on October 30, 1911, a written contract of sale between defendant and one Lindemann, as agent of Dinsdale, was made, signed by defendant in person, and for Dinsdale as follows: "B. C. Dinsdale, by H. Lindemann, Agent;" that this contract was acknowledged and recorded in the office of the register of deeds in the county where the land is situated, December 9, 1911; that on October 28, 1911, plaintiff had actual knowledge of the purchase or attempted purchase by defendant; that the deed from Dinsdale to plaintiff was recorded in the office of the register of deeds of the proper county December 15, 1911; that defendant duly tendered all amounts due under the contract of purchase by him and demanded a deed, which demand was refused.

The court further found that plaintiff is the owner and that Lindemann had no authority to make the contract on behalf of Dinsdale. These latter findings are attacked as not supported by the evidence. The defendant set up an equitable counterclaim and prayed for specific performance against the plaintiff.

The court concluded that the plaintiff was entitled to judgment establishing his claim to the land against the defendant, and for costs. Judgment was rendered accordingly, from which this appeal was taken.

The cause was submitted for the appellant on the brief of *J. Henry Bennett* and *W. F. Wolfe,* and for the respondent on that of *Proctor & Proctor.* . -

Counsel for the respondent contended, *inter alia,* that even if the bank had authority to find a purchaser it did not have authority to execute a binding contract of sale. *Jones v. Howard,* 234 Ill. 404, 84 N. E. 1041; 23 Am. & Eng. Ency. of Law (2d ed.) 900; *Stemler v. Bass,* 153 Cal. 791, 96 Pac. 809; *Gault L. Co. v. Pyles,* 19 Okl. 445, 92 Pac. 175; *Sullivant v. Jahren,* 71 Kan. 127, 79 Pac. 1071; *Helling v. Darby,* 71 Kan. 107, 79 Pac. 1073.

KERWIN, J. The first question is whether a valid contract of sale was made with defendant. The negotiations were by correspondence. Dinsdale was anxious to sell. The farm was mortgaged and the mortgage held by the Bank of Viroqua. Dinsdale had some other collateral at the bank. He was anxious to get matters fixed up. Dinsdale also wrote one Stoll, who figured some in defendant's contract of purchase. Stoll wrote inquiring about the purchase of the land in question and Dinsdale referred him to the Bank of Viroqua, as follows:

"The Bank of Viroqua holds a mortgage and I have some other collateral there. I have written them if I can get $500 net cash to me, and clean matters up there, I will deed the farm. You might call and see them if you so desire."

Dinsdale also referred to other letters of inquiry respecting purchase of the farm. Perhaps the most significant letter on the point of authority from Dinsdale to the Bank of Viroqua to sell is the following:

"Your statement under date of the 17th is at hand. I have a letter from a Viroqua party relative to the Charles Mason

farm, which I inclose. If you can arrange with this man—I do not know him—or any one, and take over the mortgage on the farm Charles Mason is now on, and send me $500 net, I will deed the old Mason farm as you desire. I think you will no doubt prefer a home party. I have had some other inquiries, which I will refer to you.".

This letter was written October 23, 1911. This letter, in connection with other facts and circumstances, shows authority on the part of the Bank of Viroqua to make the sale of the farm or land in question on the terms stated in the above letter. *Weaver v. Snively,* 73 Neb. 35, 102 N. W. 77; *Winders v. Hill,* 141 N. C. 694, 54 S. E. 440; *Holt v. Schneider,* 57 Neb. 523, 77 N. W. 1086.

But it is claimed that no authority to Lindemann, who made the contract with defendant, was shown. Lindemann was the president, manager, and principal stockholder of the bank. Although the contract was made in the name of Lindemann, the business was transacted with the bank through its president, Lindemann. All the circumstances in the case show this. It is unnecessary to detail them. The court is of the opinion that ample authority was conferred upon the Bank of Viroqua to make the sale, and that Lindemann in making the contract of sale to the defendant acted for the bank.

It is contended by the respondent that, even conceding that a valid contract of sale was made with defendant, its terms had not been complied with, and therefore the sale to respondent was valid, and that appellant has no equities against respondent. The court is of opinion that this contention cannot be sustained. It appears from the record that the sale was made so as to net Dinsdale $500, but that only $300 was paid down in December, 1912. The other $200 was to be paid the following spring, the bank offering, in case Dinsdale needed or required the other $200 before the contract of sale expired, to send it. This was obviously a substantial compliance with the offer of Dinsdale to sell for $500 net to him.

The only remaining question is whether specific performance should be adjudged in favor of appellant. It is established that the respondent made the purchase and received his deed with full knowledge of appellant's prior contract of purchase. Respondent was therefore chargeable with knowledge of appellant's equities in the property and he took title subject to appellant's rights. We hold that the respondent bought the land subject to the appellant's contract of purchase. *Roberts v. Decker,* 120 Wis. 102, 97 N. W. 519; *First Nat. Bank v. Chafee,* 98 Wis. 42, 47, 73 N. W. 318; *Beebe v. Wis. M. L. Co.* 117 Wis. 328, 93 N. W. 1103. The respondent here stands in the shoes of Dinsdale and may be compelled to convey the land to appellant. Pomeroy, Spec. Perf. sec. 465; *Forthmann v. Deters,* 206 Ill. 159, 69 N. E. 97; *Handy v. Rice,* 98 Me. 504, 57 Atl. 847; *Barney v. Chamberlain,* 85 Neb. 785, 124 N. W. 482.

Counsel for respondent, in addition to other contentions, insist that the authority from Dinsdale to the Bank of Viroqua was merely authority to find a purchaser and not to make a contract of sale. Several authorities are cited by counsel under this head, all of which we have examined, but the court is not convinced that they sustain counsel's contention.

It follows from what has been said that the judgment of the court below must be reversed, and judgment ordered for the appellant upon his counterclaim.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment for the appellant requiring the plaintiff to convey to appellant the land in question upon compliance by appellant with the terms of the purchase on his part according to the terms of the contract.

BARNES, J., dissents.