Daniel P. GAUGERT and Gayle J. Gaugert, Plaintiffs-Appellants-Petitioners,

v.

Howard E. DUVE and Jeffery J. Hansen, Defendants-Respondents.

Supreme Court

*No. 98–3004. Oral argument November 1, 2000.—Decided July 2, 2001.*

2001 WI 83

(Also reported in 628 N.W.2d 861.)

693

For the plaintiffs-appellants-petitioners there were briefs by *Joseph C. Niebler, Sr.* and *Niebler & Muren, S.C.*, Brookfield, and oral argument by *Joseph C. Niebler, Sr.*

For the defendant-respondent Jeffery J. Hansen there was a brief by *E. Joseph Kershek* and *Kershek Law Offices*, Milwaukee, and *Paul W. Schwarzenbart* and *Lee, Kilkelly, Paulson & Younger, S.C.*, Madison, and oral argument by *E. Joseph Kershek*.

For the defendant-respondent Howard E. Duve there was a brief (in the court of appeals) by *James W. Hammes* and *Cramer, Multhauf & Hammes, LLP,* Waukesha, and oral argument by *Kathryn Gutenkunst*.

¶ 1. WILLIAM A. BABLITCH, J. Daniel and Gayle Gaugert (the Gaugerts) petition this court to review a decision by the court of appeals that denied them specific performance of an option they held to purchase real estate owned by Howard E. Duve (Duve). Duve, notwithstanding the Gaugerts' option, entered into an offer to purchase contract with Jeffery J. Hansen (Hansen). The Gaugerts sued Duve and Hansen seeking specific performance of their contract. After a trial, the circuit court dismissed the complaint and the Gaugerts appealed. Following the Gaugerts filing of an appeal but before the court of appeals issued its decision, the circuit court discharged a statutory lis pendens filed by the Gaugerts pursuant to Wis. Stat. § 840.10 (1997–98). [1] The Gaugerts did not obtain a stay of the order discharging statutory lis pendens or

---

[1] All subsequent references to the Wisconsin statutes are to the 1997–98 version unless noted otherwise.

Wisconsin Stat. § 840.10 provides as follows:

an injunction prohibiting the sale of the property from Duve to Hansen. While the case was pending before the court of appeals, Duve conveyed the real estate to Han-

Lis pendens; who may file; effect when void; discharge. (1)(a) In an action where relief is demanded affecting described real property which relief might confirm or change interests in the real property, after the filing of the complaint the plaintiff shall present for filing or recording in the office of the register of deeds of each county where any part thereof is situated, a lis pendens containing the names of the parties, the object of the action and a description of the land in that county affected thereby. In any action if the defendant asks relief on a counterclaim or cross-complaint, which contains a legal description of the real estate and seeks such relief, after the filing of the counterclaim or cross-complaint the defendant shall present for filing or recording a lis pendens. From the time of filing or recording every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action to the same extent and in the same manner as if the purchaser or encumbrancer were a party thereto. In any such action in which a lis pendens has been filed or recorded, if the party who presents for filing or recording the lis pendens fails for one year after the filing or recording thereof to serve and file proof of service of the summons or the counterclaim or cross-complaint on one or more of the adverse parties, the lis pendens shall be void, and upon motion and proof the court may order it discharged. Judgment shall not be entered in favor of the party required to present for filing or recording a lis pendens until 20 days after the lis pendens has been filed or recorded.

(b) A lis pendens that is prepared by a member of the state bar of Wisconsin need not be authenticated.

(2) Proceedings for acquiring land by right of eminent domain are actions within the provisions of this section and notice of the pendency thereof may be filed at any time, except as otherwise provided by statute.

(3) The lis pendens may be discharged upon the condition and in the manner provided by s. 811.22 for discharging an attachment or by s. 806.19(1)(a) for satisfying a judgment. An instrument filed before May 1, 1951, but in accordance with this subsection shall be a discharge of the lis pendens described therein.

(4) This section applies to all courts in this state, including United States district courts.

695

sen. Although in its subsequent decision the court of appeals reversed the circuit court, on remand the circuit court denied the Gaugerts' motion for specific performance. The Gaugerts brought another appeal. The court of appeals affirmed the denial of specific performance. It is this decision that is now before use. We reverse that decision.

## FACTS AND PROCEDURAL HISTORY

¶ 2. This case has a long and complex history that has been detailed by the court of appeals in *Gaugert v. Duve*, 217 Wis. 2d 164, 579 N.W.2d 746 (Ct. App. 1998) (*Gaugert I*), and in *Gaugert v. Duve*, 2000 WI App 34, 233 Wis. 2d 190, 607 N.W.2d 310 (*Gaugert II*). The facts relevant to the disposition of the issues before us now are not in dispute.

¶ 3. In December 1988 the Gaugerts acquired 36.33 acres of farmland from Duve. At the closing the Gaugerts obtained an option of first refusal on the remaining farmland, an additional 113 acres, the property at issue in the present case.

¶ 4. The Gaugerts' option was recorded on March 9, 1995. Prior to that date, on February 15, 1995, Hansen entered into an offer to purchase contract with Duve to purchase this same 113-acre farmland.

¶ 5. The Gaugerts sought the opportunity to exercise their option. In June 1995 the Gaugerts received from Duve a notice of right to exercise option of first refusal. The Gaugerts sent Duve earnest money of $1000 and a sale contract that they asked him to sign. Hansen, upon learning of the Gaugerts' offer, amended his offer to purchase; the Gaugerts then amended their offer. In July Duve sent the Gaugerts a letter rescinding the option.

¶ 6. The Gaugerts then filed a complaint against Duve and Hansen seeking specific performance and breach of contract damages.[2] A trial was held before the Honorable Robert G. Mawdsley of the Waukesha County Circuit Court. Judge Mawdsley ultimately dismissed the complaint. In January 1997 the Gaugerts filed a notice of appeal.

¶ 7. On February 13, 1997, Duve filed a motion in circuit court seeking discharge of the lis pendens filed by the Gaugerts pursuant to Wis. Stat. § 840.10(3). A hearing on the motion was conducted in circuit court. At the hearing, counsel for the Gaugerts stated that they were not seeking to stop Duve and Hansen from closing on their deal because Hansen will take the land subject to the final outcome of the lawsuit on appeal. Counsel for the Gaugerts also argued that the court lacked authority to discharge a lis pendens.

¶ 8. The circuit court ordered the discharge of the lis pendens and gave the Gaugerts 10 days to seek a stay from the court of appeals. The Gaugerts filed with the court of appeals a motion for relief pending appeal. The Gaugerts sought either a stay of the circuit court's order discharging the lis pendens filed at the commencement of the action or, in the alternative, an injunction prohibiting the sale of the property at issue pending a ruling by the court of appeals. The Gaugerts' motion was denied. The court of appeals was not persuaded that seeking relief pending appeal in the circuit

---

[2] The Gaugerts' complaint also named as defendants Agribank, FCB (f/k/a Farm Credit Bank of St. Paul) and the County of Waukesha. The Gaugerts subsequently stipulated to dismissal of Agribank and Waukesha County as party defendants. Based upon these stipulations, the circuit court dismissed these defendants from the action.

court was impractical. At this point the Gaugerts did not return to circuit court for relief. In May of 1997 the circuit court formally discharged the lis pendens.

¶ 9.   On May 23, 1997, Duve sold the farmland to Premier, a limited liability company of which Hansen was a member. Premier began taking steps to develop the property.

¶ 10.   In February 1998 the court of appeals issued its decision reversing the decision of the circuit court. Throughout the remainder of 1998 and 1999 the Gaugerts unsuccessfully undertook various efforts to obtain an order from the circuit court for specific performance. The Gaugerts again appealed to the court of appeals. The court of appeals dismissed the case, concluding that in the absence of a stay, the conveyance of the property from Duve to Hansen rendered the appeal moot. This court subsequently accepted review.

¶ 11.   Two issues are presented. First, following a discharge of a filing of lis pendens pursuant to Wis. Stat. § 840.10, to what extent, if any, does the common law of lis pendens apply to a party to a lawsuit affecting the disputed real property? With respect to this issue, we hold that because Hansen was a party to the lawsuit and thus had actual notice of the pendency of the appeal, under the doctrine of common law lis pendens Hansen purchased the property subject to the final outcome of the litigation on appeal.[3]

¶ 12.   The second issue is whether the circuit court erroneously exercised its discretion in denying the Gaugerts' request for specific performance. As to this issue, we hold that the Gaugerts are entitled to specific performance on their contract. Accordingly, we

_____

[3] We do not address the issue of the affect of actual notice on a person who is not a party to the transaction.

remand to the circuit court to enter an order granting the Gaugerts' motion.

## ANALYSIS

### I

¶ 13.   Our analysis begins with a brief overview of the arguments set forth by the parties. Hansen contends that pursuant to Wis. Stat. § 808.07(1)[4] the Gaugerts were required to obtain a stay pending appeal in order to preserve the status quo after the circuit court entered judgment. Section 808.07(1) provides that "[a]n appeal does not stay the execution or enforcement of the judgment or order appealed from except as provided in this section or as otherwise expressly provided by law." Hansen asserts that the common law doctrine of lis pendens has no role after the entry of final judgment by the circuit court and an order dissolving statutory lis pendens. Statutory lis pendens, Wis. Stat. § 840.10(3), provides in part that

---

[4] Wisconsin Stat. § 808.07 provides in relevant part:

Relief pending appeal. (1) Effect of appeal. An appeal does not stay the execution or enforcement of the judgment or order appealed from except as provided in this section or as otherwise expressly provided by law.

(2)   Authority of a court to grant relief pending appeal. (a) During the pendency of an appeal, a trial court or an appellate court may:

1.   Stay execution or enforcement of a judgment or order;

2.   Suspend, modify, restore or grant an injunction; or

3.   Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered.

(am)   During the pendency of an appeal, the trial court may hear and determine a motion filed under s. 806.07.

(b)   Except as provided in s. 655.27(5)(a)3., relief under this subsection may be conditioned upon the filing of an undertaking in the trial court.

"[t]he lis pendens may be discharged upon the condition and in the manner provided by s. 811.22 for discharging an attachment or by s. 806.19(1)(a) for satisfying a judgment." In total, according to Hansen, the circuit court's final judgment was enforceable upon dissolution of lis pendens, unless stayed.

¶ 14.   The Gaugerts contend that the common law doctrine of lis pendens is in effect under the circumstances of this case. In their view, this means that after the circuit court's finding for Duve, Duve was free to transfer his property. However, the Gaugerts assert that as a result of the operation of common law lis pendens, Hansen took title to the property subject to their claim. According to the Gaugerts, the circuit court's discharge of statutory lis pendens had no impact among the parties to this action, the Gaugerts, Duve, and Hansen.

¶ 15.   The resolution of this case requires the analysis of common law lis pendens, statutory lis pendens, and the rules of appellate procedure. These are questions of law that we resolve independently, with the benefit of the analysis undertaken by both the circuit court and court of appeals. *See State v. Hansford*, 219 Wis. 2d 226, 246, 580 N.W.2d 171 (1998); *South Milwaukee Sav. Bank v. Barrett*, 2000 WI 48, ¶ 26, 234 Wis. 2d 733, 611 N.W.2d 448.

¶ 16.   In analyzing this issue, we will first discuss the doctrine of lis pendens as a general matter, because the fundamental principles underlying common law lis pendens and statutory lis pendens are the same. We will then discuss the doctrine of common law lis pendens, followed by a discussion of statutory lis pendens. We then conclude with a discussion of what remains of common law lis pendens in Wisconsin in light of the creation of Wis. Stat. § 840.10.

## 1.  The Doctrine of Lis Pendens

■

¶ 17.  The term "lis pendens" means pending litigation.[5] The purpose of the doctrine "is not, primarily, notice, but to hold the subject of the suit—the res—within the power of the court, so as to enable it to pronounce judgment upon it." *Brown v. Cohn*, 95 Wis. 90, 93, 69 N.W.71 (1896).

¶ 18.  Under this doctrine when property that is the subject of a suit is conveyed, the purchaser or encumbrancer pendente lite (while the action is pending) is bound by the outcome of the litigation. This well-established rule is expressed as follows in the Restatement (Second) of Judgments (1982):

> § 44.  Effect of Judgment Concerning Property Transferred While Action Is Pending
>
> A successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor, unless:
>
> (1)  A procedure exists for notifying potential successors in interest of pending actions concerning property, the procedure was not followed, and the

---

[5] Lis pendens is defined in *Black's Law Dictionary* 942–43 (7th ed. 1999) as follows:

> 1.  A pending lawsuit. 2. The jurisdiction, power, or control · acquired by a court over property while a legal action is pending. 3. A notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome.—Also termed (in sense 3) *notice of lis pendens; notice of pendency.*

successor did not otherwise have knowledge of the actions; or

(2)   The opposing party in the action knew of the transfer to the successor and knew also that the successor was unaware of the pending action.

■

¶ 19.   Without the doctrine of lis pendens, a defeated litigant could avoid the final judgment of a court by transferring disputed real property to another person, who then could claim it free of any subsequently rendered judgment. *Belleville State Bank v. Steele*, 117 Wis. 2d 563, 571, 345 N.W.2d 405 (1984). This rationale is repeated in the Restatement, which states in part:

> If property is transferred when an action is pending concerning it, the successor in interest may be aware of the litigation and seasonably join as a party, by intervention or by substitution in place of his transferor. In that circumstance, the successor then becomes bound because he is a party. If he is aware of the litigation but does not join as a party, he acquiesces in the transferor's continuing, for purposes of the litigation, to be the apparent owner of the interest in the property. His doing so is in effect treating the transferor as his representative in the action.

Restatement (Second) of Judgments § 44 cmt. a (1982).

¶ 20.   The doctrine of lis pendens is principally concerned with the power of the court to effectively administer justice when real property is in dispute.

■

## 2. Common Law Lis Pendens

¶ 21. Under the common law doctrine of lis pendens all purchasers were bound by the result of pending litigation even when they had no actual notice of the litigation. The pending action itself was deemed notice of the title, or claim of title, being asserted by the particular parties to the litigation. *Belleville State Bank*, 117 Wis. 2d at 572; 2 *Callaghan's Wisconsin Pleading and Practice* § 15.01, at 296 (4th ed. 1996). Commenting upon this procedure, an early case noted: "It is deemed that every person is bound to know the law, and to take notice of what is transpiring in the courts, from the time when the process is served and the complaint filed until the final judgment is entered." *Brown*, 95 Wis. at 93.

## 3. Statutory Lis Pendens

¶ 22. The common law method of deeming a pending suit to be constructive notice of lis pendens proved unsatisfactory due to the potentially harsh impact on purchasers who did not have actual notice of pending real estate transactions. As a result, Wisconsin and most other jurisdictions enacted lis pendens statutes. *Belleville State Bank*, 117 Wis. 2d at 572. Lis pendens statutes "were intended to ameliorate the harsh effect of the common law rule on third parties, by limiting the legal fiction of 'constructive knowledge' of pending claims to those instances where a notice of lis pendens was recorded." *TSA Int'l Ltd. v. Shimizu Corp.*, 990 P.2d 713, 736 (Haw. 1999) (brackets, internal quotation marks, and citation omitted). We outlined the history of Wisconsin's lis pendens statute in *Belleville State Bank*:

The first Wisconsin lis pendens statute authorized a party to an action affecting real property to file a lis pendens with the clerk of the circuit court of each county in which the real property was situated. Ch. 120, sec. 37, Laws of 1856. In 1858, the place of filing was changed to the register of deeds of each county in which the property was situated. Ch. 124, sec. 7, 1858 Rev. Stats. The 1858 lis pendens statute remained substantially unchanged until 1955 when the filing of a lis pendens was made mandatory where the complaint or counterclaim contains a legal description of the real property and seeks relief in respect to the title thereto. The 1955 law also prohibited the entry of judgment in favor of the party required to file lis pendens until 20 days after the lis pendens has been filed. Ch. 553, sec. 8, Laws of 1955; sec. 281.03(1), Stats. 1955.

*Id.* at 573–74 (footnotes omitted).

4.   What Remains of Common Law Lis Pendens
Following the Enactment of Statutory Lis
Pendens in Wisconsin

■

¶ 23.   Case law, treatises, and Wis. Stat. § 840.10 itself make it evident that statutory lis pendens was designed to supplement, not abrogate, common law lis pendens in Wisconsin. Our case law has held that the lis pendens created by statute "was evidently intended to be supplemental to the common law, and not repeal it." *Brown*, 95 Wis. 2d at 93.

¶ 24.   Commentators have noted that lis pendens statutes were intended to provide constructive notice of the pending litigation to persons other than the parties to the action. 6A Richard R. Powell, *Powell on Real Property* ¶ 907.3[2], at 82A–21 (discussing formal statutory notice of lis pendens). Statutory lis pendens is

thus intended to provide the means for third parties to obtain notice of the pending litigation and the court's power to enforce the outcome of that dispute against a subsequent purchaser or encumbrancer. Other commentators agree that this statutory notice "supersedes the common law, except as to those with actual notice of the pending action or who are not bona fide." 2 *Callaghan's Wisconsin Pleading and Practice* § 15.02, at 296 (4th ed. 1996) (citing *Bell v. Peterson*, 105 Wis. 607, 613, 81 N.W. 279 (1899); *Brown*, 95 Wis. at 93).

¶ 25. The plain language of Wis. Stat. § 840.10(1)(a) supports our conclusion that Wisconsin's lis pendens statute plays no role as to a purchaser who is a party to the relevant litigation. The statute states in relevant part:

> From the time of filing or recording [of lis pendens in the office of the register of deeds] every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action to the same extent and in the same manner **as if** the purchaser or encumbrancer **were a party** thereto. (Emphasis supplied.)

At the very least, the plain language of the statute ("as if the purchaser were a party thereto") indicates that the statute does not apply to those who are parties.

¶ 26. Parties to litigation have actual notice of the dispute and, therefore, as to these individuals the statute plays no role. This point was illustrated in *Hailey v. Zacharais*, 39 Wis. 2d 536, 159 N.W.2d 667 (1968). In *Hailey*, the plaintiff failed to file a notice of lis pendens as required by statute. It was held that the subsequent judgment was not void because "[a]s to par-

ties to the action. . .who appear and participate in the proceedings, the lis pendens serves no real purpose and actually has no application." *Id.* at 538 (citing *Pennfeather v. Kenosha*, 210 Wis. 695, 700, 247 N.W. 440 (1933)).

■

¶ 27.  Based on all the above, we hold that because Hansen was a party to the lawsuit, and thus had actual notice of the pending of the appeal, the doctrine of common law lis pendens continued to protect the Gaugerts' interest. Therefore, Hansen took the property subject to the outcome of the litigation on appeal.

¶ 28.  Hansen disagrees with this holding for a number of reasons. Hansen argues that once the statutory notice of lis pendens was discharged, and absent any order to stay the discharge, Duve was entitled to sell the property under the rule that "enforcement of a judgment is *not* stayed pending appeal." *Chase Lumber and Fuel Co. v. Chase*, 228 Wis. 2d 179, 203, 596 N.W.2d 840 (Ct. App. 1999). Hansen contends that seeking discharge of lis pendens is a species of enforcement. This analysis, however, does not go far enough. In this case, Duve, the property owner, sold the disputed land to Hansen, a co-defendant who appeared and participated in the proceedings. Statutory lis pendens is for the benefit of third parties. As a result statutory lis pendens has no role as to Hansen and neither the filing nor the discharge of statutory lis pendens affected the court's jurisdiction over the real property as between Duve, Hansen, and the Gaugerts.[6]

---

[6] Because of our conclusion that the common law of lis pendens applied to Hansen, we do not address the Gaugerts' argument that the circuit court lacked the power to discharge the statutory lis pendens.

Thus under our common law doctrine of lis pendens Hansen, the successor in interest of property that was the subject of a pending action to which his transferor was also a party, took the property subject to the final resolution of the Gaugerts' claim.[7]

¶ 29.   Hansen next contends that the doctrine of common law lis pendens does not survive final judgment of the circuit court. In other words, because Duve conveyed the property to Hansen after the circuit court entered its judgment, Hansen asserts that he should not be bound by the court of appeals' decision to reverse the circuit court. In his view, the proper remedy for the Gaugerts after succeeding on appeal is breach of contract damages. We disagree with this analysis. Hansen is bound to the final outcome of the Gaugerts' appeal as the successor in interest to the property and a party to the action. Treatises indicate the majority rule to be that the doctrine remains in effect as long as procedures for review remain available to the losing party. 6A Powell, *supra*, ¶ 907.4[2], at 82A–24–25; 3 *Merrill on Notice* § 1169, 93 (1952).

> [P]ersons who obtain an interest in property involved in litigation after the entry of the court's judgment but before review proceedings are completed are subject to the results of the review. Most types of review that are considered to be continuations of the original litigation qualify to keep the lis pendens in operation. (Footnote omitted.)

---

[7] For the purposes of resolving this case, we need not and do not address how the dissolution of statutory lis pendens impacts upon the sale of disputed property to a buyer who is not a party to the litigation.

6A Powell, *supra*, ¶ 907.4 [2], at 82A–25. In Wisconsin, an action is pending until there is an exhaustion of rights of appeal. *See Larson v. Fetherston*, 44 Wis. 2d 712, 718, 172 N.W.2d 20 (1969). As a result, common law lis pendens operates until the time to seek an appeal has expired or until there is an exhaustion of the right to appeal.

¶ 30.　Based upon the foregoing analysis, we find unpersuasive Hansen's contention that Wis. Stat. § 808.07 trumps common law lis pendens. Pursuant to § 808.07, "[a]n appeal does not stay the execution or enforcement of the judgment or order appealed from except as provided [in § 808.07] or as otherwise expressly provided by law." Wis. Stat. § 808.07(1). The Gaugerts did not obtain a stay pursuant to § 808.07(2) of the circuit court's order expunging statutory lis pendens. However, because Hansen is bound by the decision of the court of appeals' reversing the circuit court because of the common law of lis pendens and his party status, the order expunging statutory lis pendens has no effect on the Duve to Hansen transaction. Accordingly, the absence of a stay of Judge Mawdsley's order discharging statutory lis pendens does not change our analysis.

¶ 31.　Further, as a doctrinal matter, although an objective of common law lis pendens was to preserve the status of property pending the outcome of litigation, the doctrine of lis pendens is distinct from a stay. 6A Powell, *supra*, ¶ 907.1, at 82A–3. "Unlike a judicial stay, the lis pendens does not prevent transfer of property even though it is involved in a court action, but any transfer is made with the risk that the transfer may be nullified if the judgment goes against the transferor." 6A *id.* (footnote omitted). Thus, neither common law lis pendens nor statutory lis pendens barred Duve's trans-

fer of the property to Hansen either before or after the entry of final judgment in the circuit court. Pursuant to their contractual agreement, Duve transferred the property to Hansen. Hansen, as a party to the litigation, took the property with the risk that on appeal the circuit court's order would be reversed. Hansen argues that this analysis results in a de facto stay of the final judgment because the property owner's ability to convey marketable title is still tied by the operation of lis pendens.

¶ 32. We recognize that although lis pendens does not bar the alienation of property, in the ordinary case the pendency of litigation either attacking a seller's title or bringing claims against it "is treated as an encumbrance and as making the title unmarketable." 2 *Patton on Land Titles* § 580, at 135 (2d ed. 2000 Supp.); *also* 6A Powell, *supra*, ¶ 907.1, at 82A–3 (risk that transfer may be nullified is sufficiently great that title examiner or insurer will protect itself by noting that title is subject to pending litigation through the lis pendens doctrine). As a result, the practical effect of lis pendens may be in some instances to restrict a seller's ability to alienate his property to another party defendant. As previously noted, however, lis pendens and a stay are separate legal doctrines. The legislative intent expressed in Wis. Stat. § 808.07 fulfills a different purpose than common law lis pendens. The two strands of law may have some overlap in effect, but our analysis here is an effort to give full expression to each rule.

¶ 33. Arguably, the Gaugerts could have sought to enjoin the sale of the farmland by Duve to Hansen. However from the Gaugerts' perspective such a step would have been a redundancy, given that pursuant to the common law of lis pendens Hansen purchased the

real property subject to the final judgment of the courts upon the Gaugerts' claim.

¶ 34.   Next Hansen contends that our conclusion in this case leaves him worse off as a result of prevailing in the circuit court proceedings, because the property could be sold freely to a nonparty. We note, however, that at the circuit court hearing on Duve's motion to discharge statutory lis pendens, counsel for Hansen appeared and urged the court to grant Duve's motion to expunge lis pendens. Hansen could have opposed Duve's motion in order to ensure that Duve could not convey the property to a third party who was not on constructive notice of the pending litigation.

¶ 35.   Finally, we will examine a number of cases from other jurisdictions relied upon by both the court of appeals and Hansen. As previously noted, the court of appeals concluded that the Gaugerts' failure to obtain a stay rendered their demand for specific performance moot. The court of appeals and Hansen direct our consideration of several Illinois cases, including *Duncan v. Farm Credit Bank*, 940 F.2d 1099 (7th Cir. 1991) (applying Illinois law), and *Town of Libertyville v. Moran*, 535 N.E.2d 82 (Ill. App. Ct. 1989).

¶ 36.   In *Duncan*, the Seventh Circuit considered a situation somewhat similar to the case at hand. Duncan filed a lis pendens and sued Farm Credit Bank seeking to enforce a right of first refusal to repurchase foreclosed property. *Duncan*, 940 F.2d at 1101. After the district court dismissed the suit, the Duncans did not seek a stay of judgment and the Bank sold the disputed property to a third party. *Id.* The Seventh Circuit examined its own rule for obtaining a stay, Fed. R. Civ. P. 62(c). The court determined that unless the rule is invoked, an appellant risks being unable to realize the benefits of the successful appeal. *Id.* at 1103.

710

The *Duncan* court concluded, "in light of Illinois law providing for termination of a *lis pendens* upon a court's final judgment, the Duncans' failure to seek a stay of that judgment pending appeal, and [the subsequent buyers'] status as a non-party, we cannot grant any relief to the Duncans." *Id.* at 1104.

¶ 37.   The *Duncan* case, like the court of appeals in *Gaugert II*, relied upon *Moran*. The *Moran* decision provides additional background concerning Illinois law. In *Moran*, the Town of Libertyville filed a condemnation action to acquire certain property. *Moran*, 535 N.E.2d at 83. After a jury returned an award of just compensation, the Town appealed but did not request a stay of judgment or pay the award. During the pendency of the appeal the property was sold to a nonparty to the litigation. *Id.* The Town argued that because it filed a notice of lis pendens pursuant to state statute, the notice remained in effect during the pendency of the appeal. *Id.* at 84. The court disagreed, noting that Illinois Supreme Court Rule 305(i) (107 Ill. 2d R. 305) specifically addressed the effect of the failure to obtain a stay upon interests in property. This Illinois rule provided in part:

> "If a stay is not perfected within the time for filing the notice of appeal...the reversal or modification of the judgment does not affect the right, title, or interest of any person *who is not a party to the action* in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed...." (Emphasis supplied).

*Moran,* 535 N.E.2d at 85 (quoting Rule 305(i)) (emphasis supplied).[8]

¶ 38.   The *Moran* court concluded that the Illinois rule pertaining to obtaining a stay provided the exclusive means by which an appellant may protect its interest in property pending appeal and that the statute providing for lis pendens was inapplicable on appeal. *Id.* at 85. Further, the court wrote that the practice and historical notes to the Illinois lis pendens statute refer the reader to Illinois Supreme Court Rule 305(i). Wisconsin Stats. §§ 808.07 and 840.10 do not contain sections analogous to the Illinois rules.

¶ 39.   In *Gaugert II* the court of appeals noted that in the Illinois cases it cited the third-party purchaser was not a party to the appeal and was not subject to the court's jurisdiction. The court of appeals concluded, however, that a different result was not required in this case merely because Hansen was a named party. In the court's view, had the Gaugerts sought a stay, the circuit court "would have had the luxury of being able to fashion relief that prevented Hansen from disturbing the status quo because he was subject to the court's authority. Preventing an alteration of existing conditions is preferable to later untangling changes in an attempt to restore things to the way they were." *Gaugert,* 2000 WI App 34, ¶ 22 n.8. While we may agree with this sentiment, the Gaugerts are entitled to what the law permits, and Hansen is subject to what the law demands. In the present case Hansen was a party to the case since its initial filing and therefore purchased the property subject to the final resolution of the case.

---

[8] It is not precisely clear what year of the Illinois statutes is being quoted in *Town of Libertyville v. Moran,* 535 N.E.2d 82, 85 (Ill. App. Ct. 1989).

¶ 40. Hanson also directs our attention to *Da Silva v. Musso*, 559 N.E. 2d 1268 (N.Y. Ct. App. 1990). In *Da Silva*, the plaintiff fled a notion of pendency and commenced an action for specific performance of a contract to convey real property. Specific performance was granted, but the award was reversed on appeal. Plaintiff appealed again, but did not obtain a stay and his notice of pendency was cancelled. The defendants sold the disputed property to a buyer who had actual knowledge of the pending appeal. *Id.* at 1269. In its review of the matter, the New York Court of Appeals reinstated the order for specific performance. Additional litigation occurred. Upon further review, the court determined that "once a final judgment or order dismissing the plaintiff's complaint has been entered, the plaintiff has no further right to restrain the free transfer of the property that was the subject of the complaint unless he has followed the statutorily prescribed procedures for continuing the previously filed notice of pendency." *Id.* at 1272. The *Da Silva* court noted that a buyer's actual knowledge of the pending appeal does not assist the plaintiff where the plaintiff has not complied with other statutorily prescribed procedures. *Id.*

¶ 41. The reasoning of the *Da Silva* decision was linked closely to the statutes of that jurisdiction. We do not discern from the language of Wis. Stat. § 808.07 any intent to abandon the application of common law principles of lis pendens to the parties to litigation concerning real property. Even if we were to find that § 808.07 is ambiguous on this issue, we would nevertheless reach the same conclusion. It is a rule of statutory construction that an intent to change the common law must be clearly expressed. *Esser Distributing Co. v. Steidl*, 149 Wis. 2d 64, 69, 437 N.W.2d 884

(1989). At the time § 808.07 was created, our prior holdings had established that statutory lis pendens was a supplement to common law lis pendens. The language of the statute does not address either common law lis pendens or statutory lis pendens. The parties have not provided any dispositive evidence from the legislative history of § 808.07 that would lead us to conclude that the enactment of the statute was intended to modify the common law of lis pendens.

¶ 42.   Based upon all the above, we conclude that neither the dissolution of statutory lis pendens nor the adoption of Wis. Stat. § 808.07(1) prevent Hansen from holding the property subject to the final resolution of the case in the appellate courts.

## II

¶ 43.   The second issue requires a determination of whether the Gaugerts should be granted their demand for specific performance. The court of appeals concluded that the equities favored Hansen because the Gaugerts did not seek the relief available to them under Wis. Stat. § 808.07(1). *Gaugert*, 2000 WI App. 34, ¶ 27.

¶ 44.   " 'An action for specific performance is an equitable remedy and rests in the discretion of the court.' "*Anderson v. Onsager*, 155 Wis. 2d 504, 513, 455 N.W.2d 885 (1990)(quoting *Edlin v. Soderstrom*, 83 Wis. 2d 58, 70, 264 N.W.2d 275 (1978)). We must determine, therefore, whether the circuit court erroneously exercised its discretion in refusing to grant the Gaugerts specific performance. The circuit court's decision will be sustained if the court " 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a con-

714

clusion that a reasonable judge could reach.' " *Id.* at 514 (quoting *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982)).

¶ 45.   In issuing a ruling from the bench, the circuit court focused its analysis upon several points, the most significant of which are summarized as follows. First, the court noted that Wis. Stat. § 840.10(3) provides for the discharge of lis pendens pursuant to Wis. Stat. § 811.22,[9] set forth below. The circuit court found that the lis pendens in this case had been discharged, and accordingly the terms of § 811.22 governed. The circuit court reviewed the procedural history of the litigation and relevant legal authority. It was noted that after Judge Mawdsley ordered discharge of statutory lis pendens, the Gaugerts elected to not seek an injunction or stay of the court's decision.

¶ 46.   The circuit court also concluded that as between the Gaugerts and the defendants the equities were perhaps equal due to the uniqueness of the property and the competing interests at stake. However, the circuit court concluded that the legal considerations in this case indicated that the Gaugerts had elected to forego steps that would have preserved the remedy of specific performance.

---

[9] Wisconsin Stat. § 811.22 provides:

> When the defendant recovers judgment all the money or property held by any writ of attachment shall be delivered to him or her, subject to the plaintiff's rights on appeal, and he or she may maintain an action on the plaintiff's bond for the assessed damages sustained by reason of the writ of attachment. Upon the entry of final judgment in favor of the defendant or on satisfaction of a plaintiff's judgment, the clerk of court shall, if real estate was attached, certify the fact of the judgment or satisfaction, and on recording the certificate with the register of deeds in any county in which attached lands are situated the register shall enter the certificate upon the records of his or her office in discharge of the attachments.

¶ 47. The circuit court's decision was based upon an erroneous interpretation of the law. In the present case, Hansen is bound to the outcome of this action on appellate review because he is the successor in interest and a party. The absence of a stay of the order discharging statutory lis pendens did not change the Gaugerts' ability to reap the benefit of the court of appeals' decision with respect to Hansen. The circuit court's analysis did not reveal any factual considerations that would make specific performance unfair, unreasonable, or impossible. *See Anderson,* 155 Wis. 2d at 512–13. We find it unreasonable to conclude that the Gaugerts should be denied specific performance when the law of lis pendens protected their interest. Accordingly, we reverse the circuit court's decision and grant the Gaugerts' motion for specific performance.

¶ 48. Hansen raises a number of arguments against this conclusion, none of which we find to be persuasive. First, he asserts that the Gaugerts improperly made him a party to the suit against Duve. Hansen notes that the circuit court awarded him statutory costs and attorney's fees because the Gaugerts failed to pursue any cause of action against Hansen. Although the Gaugerts appealed this award, they subsequently abandoned their appeal on this matter. *See Gaugert I,* 217 Wis. 2d at 79 n.1. Hansen contends that the Gaugerts are using his party status to contend that his rights are more limited than those of other potential third-party purchasers.

¶ 49. As set forth in the description of the facts, this action began before Judge Mawdsley. In his decision from the bench after trial was held, Judge Mawdsley discussed Hansen's request for fees based upon the argument that he was called upon to partici-

pate in this case via the Gaugerts' lawsuit when the Gaugerts had no claim against Hansen. Judge Mawdsley concluded that Hansen presented himself as an interested party and stood to gain if the rulings and findings of the court were upheld. The following excerpts of Judge Mawdsley's remarks from the bench are illustrative:

> After going through the notes and testimony and even reading the excerpts from the deposition, Mr. Hansen is definitely and presented himself as an interested party and also is someone who by way of this court's declaration stands to gain if the rulings and findings of the court are upheld. I think that he was brought in because of the—his position and because of the letters that his attorney wrote back and forth during this key time period of what are we going to do about this right of first refusal, et cetera, and he definitely - - [Hansen's counsel] insisted that he would be enforcing his rights. I don't think it's frivolous or precipitous of [the Gaugerts' counsel] to —on behalf of Mr. Gaugert to take care of this. I think there was tremendous judicial economy in bringing Mr. Hansen in. I think he's definitely an interested party by his own activity. I can't see that this is a frivolous claim. Some of the claims don't get found to be valid. I agree that in effect what the court's ruling does today is give Mr. Hansen a declaratory ruling on the documents that are being questioned here, especially this right of first refusal, and that inures to his benefit.
>
> . . .
>
> There's nothing—Court finds nothing frivolous in this particular setup of pleadings and this particular testimony.
>
> . . .

717

I found you have an interest and your interest basically was upheld. Does that make you a prevailing party?

. . .

I think you can declare that Mr. Hansen by his presence does prevail versus the right of first refusal held up by Mr. Gaugert. . . .So on that basis the court would rule that with respect to Mr. Hansen statutory and only statutory attorneys' fees would be appropriate.

¶ 50.   It appears from these remarks from the bench that Judge Mawdsley, having conducted the trial in the circuit court on this matter, considered Hansen to be both an interested party and a prevailing party. We find this reasoning persuasive. As a result, Hansen's assertion that he was improperly made a party to this case fails to move the balancing of the equities in his favor.

¶ 51.   Second, Hansen argues that after Duve's motion to discharge lis pendens was granted, Duve threatened to sell the property to another buyer, depriving Hansen of the benefit of his contract with Duve. Alternatively, Hansen asserts that if he refused to close the transaction with Duve, Duve had the option of suing Hansen for breach of contract. As we have previously noted, however, Hansen could have, but did not, oppose Duve's motion to expunge statutory lis pendens.

¶ 52.   Our analysis of this issue is aided by an analogous situation presented in *Webb v. Mason,* 152 Wis. 19, 139 N.W. 442 (1913), in which this court considered an award of specific performance after real property had been conveyed to a party who had notice of a prior sale of the property to another person. In that case, it was determined that the respondent, Webb,

718

had made his purchase and received a deed with full knowledge of the appellant Mason's prior contract of purchase. As a result, the court found that the respondent was chargeable with knowledge of Mason's equities in the property and took title to the farm subject to Mason's purchase contract.

¶ 53.   In sum, we conclude that the circuit court erred in refusing to grant this remedy. We conclude that specific performance should be ordered.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.